IRVIN AGENCY, INC., Plaintiff, *v.* HAROLD M. HESS, as Treasurer of New York Fire Insurance Exchange, Defendant.*

Supreme Court, Special Term, Kings County, December 6, 1940.

*Samuel Rubin*, for the plaintiff.

*Powers, Kaplan & Berger*, for the defendant.

* Affd., 261 App. Div. 935.

HALLINAN, J. Defendant is the treasurer of a voluntary association known as the New York Fire Insurance Exchange which was organized in 1899 for the purpose of stabilizing conditions in the fire insurance business. Its present membership consists of some seventy-two insurance companies and fifty-nine agencies. Upon joining the exchange, each member must give an express promise to comply with the rates, rules and regulations as promulgated by it.

Plaintiff, which conducts an insurance agency in the boroughs of Brooklyn and Manhattan, was elected to membership in the exchange on October 14, 1931, after promising to comply with the requisite rates, rules and regulations. Pursuant to certain charges which were filed against the plaintiff on November 18, 1938, a duly authorized committee of the exchange, known as the arbitration or grievance committee, fined plaintiff the sum of $1,671.53 for a violation of a regulation relating to the rates chargeable upon the issuance of policies. Shortly thereafter, following another investigation into plaintiff's activities, it was fined the further sum of $1,000 for violation of the regulation prohibiting a member from making loans to brokers. Neither of these two fines has been paid.

Plaintiff, being apprehensive that its failure to pay the above specified fines will result in its suspension or expulsion from the exchange with detrimental consequences to its business, has instituted the instant action for the purpose of having the court determine that such fines are illegal and that because thereof the defendant be enjoined from enforcing the same.

Defendant has moved herein for summary judgment. In support of the application, and as establishing the factual sufficiency of a separate defense which has been interposed in bar of the action, defendant refers to certain provisions of the rules and regulations of the exchange which he deems determinative herein. Section 11 thereof specifies the procedure to be followed before a member of the exchange may be suspended or expelled from membership. Subdivision (h) of the latter section indicates that no member may be suspended or expelled unless, in the first instance, the arbitration or grievance committee specifically recommends such action, and that thereafter its recommendation to such effect is approved not only by the executive committee of the exchange but, in the event that the aggrieved member appeals, by the confirmation of that approval by eighty per cent of the affirmative vote of the members at a meeting duly called to consider the question. It will thus be noted that even in the event that the arbitration or grievance committee recommends the ouster of a member, and the executive committee thereafter approves of such action, nevertheless, upon appeal a dissenting vote of merely twenty-one per cent of the

members present will suffice to effectuate a veto of the entire proceeding.

It is of much significance to observe that although the two fines were levied upon plaintiff more than a year ago, no proceedings have thus far been even *initiated* by the requisite recommendation of the arbitration or grievance committee, in contemplation of plaintiff's ultimate suspension or expulsion from membership. It cannot be assumed that even if and when such proceedings are initiated by the recommendation of the latter committee, their action will be approved by the executive committee and then confirmed by the necessary vote of the members of the exchange. Obviously it will be assumed in the first instance that plaintiff will not be ultimately suspended or expelled, unless as a condition precedent thereto there has been due recognition of its legal rights. I am prompted to allude to the foregoing by virtue specifically of the fact that plaintiff alleges, without contradiction, that it was given no opportunity to be heard upon the particular charge which resulted in the imposition of the $1,000 fine. Of course, if plaintiff's rights were thus disregarded, no order of suspension or expulsion may be predicated upon the non-payment of the latter fine. The levying of the fine, under such circumstances, necessarily would be void. (See *People ex rel. Deverell* v. *M. M. P. Union*, 118 N. Y. 101.)

After a consideration of the undisputed proof which has been offered by defendant, it must be concluded that the present action has been prematurely brought. It anticipates a contingency which may never occur. Plaintiff assumes that it will be suspended or expelled, irrespective of the defenses or excuses which it may interpose or present, without waiting to see what, if any, the action of the arbitration or grievance committee will be, or whether such action if taken will be approved by the executive committee and then confirmed by the general body. A wealth of authority supports the general conclusion that a member of a voluntary organization must exhaust available remedies specifically given by the rules and regulations of the society before applying to the courts for relief. A typical case is disclosed in *Moyse* v. *New York Cotton Exchange* (143 App. Div. 265) wherein it is stated (at p. 268): " It is the settled law that a member of such an association as the Cotton Exchange, against whom proceedings are instituted under its by-laws, must first exhaust his remedies within the association before he may invoke redress from the courts. The rule on this subject is thus stated by the Court of Appeals in *Thomas* v. *Musical Mut. Protective Union* (121 N. Y. 45): ' We practically held in the *Hurst* case that the remedy by injunction could not lie, as no violation of plaintiff's rights had happened, or may ever happen, and no injury thereto is threatened in such a sense as

ustifies a preventive remedy, and the rule there adopted must govern this case.' ' We have not been referred to any authorities holding that an action in equity will be sustained under such circumstances. Even in the case of offenses involving the penalty of expulsion from similar societies, actions have been maintained to enjoin such societies from denying the privileges of membership to a party expelled, *only after action by the society expelling such member has been had.* No case has been cited where an injunction has been granted in anticipation of such an event, and we think, within settled rules, that suit in equity for such a purpose is not maintainable.' "

Not having yet been suspended or ousted from membership and not thus being presently aggrieved, there is, therefore, no present basis upon which plaintiff may challenge the legality of the so-called " non-intercourse " provision of the rules and regulations, upon the ground that such provision is violative of section 340 of the General Business Law and section 580 of the Penal Law, as plaintiff asserts in the statement of its first cause of action. That provision reads as follows: " No member of this Exchange, or signatory to the Exchange Agreement, or agency permitted under Section 18 of the Exchange Agreement, shall transact, directly or indirectly, any new or renewal fire insurance business on risks located in New York Fire Insurance Exchange territory, with any member of this Exchange or signatory company or agency as such during the period of the suspension of any such member or signatory company or the suspension or revocation of any such agency, as provided for in this Agreement, or with any company or agency, being eligible to approval by this Exchange or to membership in this Exchange or to become signatory to the Exchange Agreement, which is not a member, signatory company, or accredited agency." Parenthetically, however, it may be stated that the legality of provisions similar to the foregoing has often been sustained. To such effect, see *Wolfenstein* v. *Fashion Originators Guild of America* (244 App. Div. 656) and *Heim* v. *New York Stock Exchange* (64 Misc. 529, per Mr. Justice CRANE, later Chief Judge of the Court of Appeals).

One further point requires brief discussion. Subsequent to the institution of the action, and prior to the service of the answer, plaintiff brought on an application for temporary injunction. That motion was granted. It is now asserted that the granting of that motion constitutes the law of the case, precluding the instant court from holding that the bringing of the action is premature. There is no merit in such contention. On the contrary, the rule is well settled that in actions in equity, where an injunction is asked for, the granting of a preliminary injunction on affidavits will not be regarded

as *res judicata* when the case comes to be tried. (See *Aberon Bakery Co., Inc.,* v. *Raimist,* 141 Misc. 774, and cases cited.) As pointed out above, the temporary relief was granted to plaintiff herein prior to the time when defendant had served its answer disclosing the premature nature of the present action. Under such circumstances, it cannot be said as a matter of law that the decision was determinative in any way of the particular issue now involved. In any event, a motion for summary judgment, being under proper circumstances the procedural equivalent of a trial, may not be defeated upon the ground here urged by plaintiff. Motion granted.

The granting of the above motion necessarily requires a denial of plaintiff's application for an examination before trial.